**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RHONDA FERGUSON,   ) | |
| ) | 3:13-cv-00262-RCJ-VPC |
| Plaintiff,   ) | |
| ) | |
| v.   ) | **REPORT AND RECOMMENDATION** |
| ) | **OF U.S. MAGISTRATE JUDGE** |
| CAROLYN W. COLVIN,   ) | |
| Acting Commissioner of Social Security,   ) | |
| Defendant.   ) | February 28, 2014 |
| ) | |

This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for remand/reversal (#10).[1] Defendant filed an opposition and a cross-motion for summary judgment (#14). Plaintiff replied (#15). For the reasons set forth below, the court recommends that plaintiff's motion for remand (#10) be denied, and defendant's cross-motion for summary judgment (#14) be granted.

### I. FACTUAL AND PROCEDURAL BACKGROUND

On September 9, 2011, plaintiff Rhonda Ferguson ("plaintiff") filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (Administrative Record "AR" 139-144), alleging that she became disabled on February 5, 2010. *Id.* at 140. Plaintiff alleged disability due to chronic, severe knee pain due to disorder of the right tibia status post fracture and open reduction with internal fixation; post traumatic arthritis of the right knee secondary to tibial plateau fracture; diabetes mellitus; osteopenia; complex regional pain syndrome, chronic

---

[1] Refers to the court's docket numbers.

reflex sympathetic dystrophy, and myofascial pain.  *Id*. at 474-475, 600, 648, 684-685.  At the time of the alleged onset of disability, plaintiff was fifty-seven years old (#10, p. 5).  She completed high school as well as one year of college.  *Id*.  Defendant Commissioner denied plaintiff's application initially and on reconsideration (AR 81-85, 87-89).

On November 16, 2012, plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Wynne O'Brien-Persons.  *Id.* at 34-57.  The ALJ followed the five-step sequential process for evaluating disability claims, set forth in 20 C.F.R. § 404.1520, and issued a written decision on December 28, 2012, finding plaintiff had "not been disabled" pursuant to the Social Security Act at any time from the alleged onset date through the date of the ALJ's decision.  *Id.* at 20-27.  Plaintiff appealed, and the Appeals Council denied review.  *Id.* at 1-5.  Thus, the ALJ's decision became the final decision of the Commissioner.

On May 20, 2013, having exhausted all administrative remedies, plaintiff filed a complaint for judicial review (#1-1).  Plaintiff contends the ALJ's decision was based on legal error and is not supported by substantial evidence in the record (#10, p. 10).  Specifically, plaintiff asserts that the ALJ: (1) erred in determining that plaintiff could return to her past work as "administrative assistant;" (2) erred by not recognizing that plaintiff's past work was composite in nature and in finding that plaintiff could return to the least strenuous of her past duties; and (3) posed an improper hypothetical to the vocational expert by asking her to consider the impact of a workplace accommodation on the availability of jobs.  *Id.*  Accordingly, plaintiff asks the court to reverse or remand the ALJ's decision.  *Id.* at 1.

## II.  STANDARD OF REVIEW

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record.  *Stout v. Comm'r Soc. Sec. Admin.*, 454

F.3d 1050, 1052 (9th Cir. 2006); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (internal quotation marks and citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995) (citation omitted). "However, if evidence is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld." *Id.* at 749 (citation omitted). The ALJ alone is responsible for determining credibility and for resolving ambiguities. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

The initial burden of proof rests upon the claimant to establish disability. 20 C.F.R. § 404.1512(a); *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986) (citations omitted). To meet this burden, a plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . " 42 U.S.C. § 423 (d)(1)(A).

### III. DISCUSSION

**A. Five-Step Sequential Process**

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or

nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combinations of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include: "(1) [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii), (c). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner determines whether the impairment is equivalent to one of a number of specific impairments listed in 20 C.F.R. pt. 404, subpt. P, app.1 ("Listed Impairments"). 20 C.F.R. § 404.1520(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education, or work experience. 20 C.F.R. § 404.1525(a). If the claimant's impairment meets or equals one of the

Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d). If the claimant's impairment is severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last fifteen (15) years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ reviews the claimant's "residual functional capacity" ("RFC") and the physical and mental demands of the work previously performed. *See id*.; *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545. In determining RFC, an ALJ must assess all evidence, including the claimant's and others' descriptions of limitation, and medical reports, to determine what capacity the claimant has for work despite the impairments. *See* 20 C.F.R. § 404.1545(a).

At step four, the ALJ may consider any of the claimant's daily activities that "may be seen as inconsistent with the presence of a condition which would preclude all work activity." *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (upholding denial of disability benefits where claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries"); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (upholding denial of benefits based in part on determination that claimant performed daily activities that were transferrable to a work setting); compare *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (concluding activities not transferrable to work setting); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (claimant should not be "penalized for attempting to lead [a] normal [life] in the face of [her] limitations"); *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 2007) (noting that "many home

activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

A claimant can return to previous work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation and citation omitted).

If the claimant can still do past relevant work, then he or she is not disabled for purposes of the Act. 20 C.F.R. § 404.1520(f); *see also Berry*, 662 F.3d at 131 ("Generally, a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e), (f); *see also Yuckert*, 482 U.S. at 141-142, 144. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The ALJ may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F. 3d 1094, 1100 (9th Cir. 1999).

"The [G]rids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth in rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there

are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

The ALJ may not rely solely on the Grids unless they accurately and completely describe the claimant's abilities and limitations. *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) (citation omitted). The ALJ must take the testimony of a vocational expert where the claimant suffers from non-exertional limitations that are "sufficiently severe so as to significantly limit the range of work permitted by his exertional limitation." *Hoopai*, 499 F.3d at 1076 (internal quotation and citation omitted). Further, where the ALJ finds that a nonexertional limitation alone is severe [at step two of the sequential process] (absent any exertional limitation), the ALJ is not required to seek the assistance of a vocational expert at step five unless the nonexertional limitation(s) are "significant, sufficiently severe, and not accounted for in the grid[s]." *See id*. at 1076.

If, at step five, the ALJ establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the ALJ determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin*., 574 F.3d 685, 689 (9th Cir. 2009). However, "[a] finding of 'disabled' under the five-step inquiry does not automatically qualify a claimant for disability benefits." *Bustamante*, 262 F.3d at 954.

**B. ALJ's Findings**

The ALJ found that plaintiff suffers from the severe impairments of diabetes mellitus and degenerative joint disease of the right knee (AR 22). The ALJ also found that plaintiff retains the RFC to perform light work, but with several limitations. *Id.* at 22-23.

The ALJ considered plaintiff's age, education, work experience and RFC, and found that she is capable of performing past relevant work as an administrative assistant, accounting clerk, personnel manager, and scheduler. *Id.* at 25. Accordingly, the ALJ determined that plaintiff "has not been under a disability," as defined in the Social Security Act. *Id.* at 26. Specifically, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.

2. The claimant has not engaged in substantial gainful activity since February 5, 2010, the alleged onset date (20 C.F.R. § 404.1571, *et. seq.*).

3. The claimant has the following severe impairments: diabetes mellitus and degenerative joint disease of the right knee (20 C.F.R. §§ 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except she can stand/walk 2 hours and sit 6 hours in an 8-hour workday. She requires a break every 1.5 hours to elevate her leg above her heart for 15 minutes. The claimant may never climb ladders/ropes/scaffolds, crouch, or crawl. She may occasionally climb ramps/stairs, balance, and stoop. The claimant must avoid concentrated exposure to extreme cold, extreme heat, and vibrations. She must also avoid moderate exposure to hazards.

6. The claimant is capable of performing past relevant work as an administrative assistant, accounting clerk, personnel manager, and scheduler. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

> 7. The claimant has not been under a disability, as defined in the Social Security Act, from February 5, 2010, through the date of this decision (20 C.F.R. § 404.1520(f)).

*Id.* at 22-26.

**C. Determination that Plaintiff Could Return to her Past Work as an Administrative Assistant**

Plaintiff first contends the ALJ erred at Step Four in determining that plaintiff could return to her past work as an administrative assistant because she did not perform that work for a sufficient length of time to meet the durational requirement for past relevant work (#10, p. 11).

"[P]ast relevant work . . . is work that you [the claimant] have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. §§ 404.1560(b)(1). The position of administrative assistant is in the Dictionary of Occupational Titles ("DOT") category 169.167-010 and is considered a skilled position with a specific vocational preparation ("SVP") number of 7 (AR 26, 50). The DOT defines "SVP" as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, p. 1009 (4th ed. 1991). SVP 7 means "over 2 years up to and including 4 years." *Id*. Accordingly, plaintiff would need to have two to four years' experience as an administrative assistant in order to have learned the job well enough for the position to constitute past relevant work.

Here, in the Work History Report that plaintiff provided with her claim for disability benefits, she indicated that she worked as an "administrative assistant" for six months in 2001 (AR 158). However, defendant points out that the vocational expert ("VE") considered and the ALJ's decision noted that plaintiff subsequently worked for nine years in a higher-skilled position that she described as "HR" or "human resources" (#14, p. 4; AR 26, 45, 49-50, 158). In her Work History Report, plaintiff described her HR duties as "[f]iled and completed paperwork, sent out memos, [conducted] employee orientation, administrate[d] policies, monitor[ed] performance, [and]

implement[ed] company policies" (AR 159). According to the DOT, the duties for an administrative assistant include responsibilities that plaintiff bore in her HR job, such as conducting orientation of new employees, collecting statistical records of performance data, and issuing and interpreting operating policies (AR 159). *See* DOT 169.167-010, 1991 WL 647424. Defendant is thus correct that the ALJ properly relied on the VE's reasonable conclusion that, based on plaintiff's work history, she had sufficient experience performing the duties of an administrative assistant to have learned the job, even if some of that experience came from a position plaintiff described as "HR" and not "administrative assistant."

The court notes that defendant is also correct that any error would be harmless because the ALJ also found that plaintiff had other past relevant work, namely, as an "accounting clerk" (#14, p. 4; AR 26, 50, 158, 161). The position of accounting clerk has an SVP of 5, which means plaintiff would have had to perform the job for "over six months up to and including 1 year." DOT 216.482-010, 1991 WL 671933. According to plaintiff's Work History Report, she served as an "accountant" for eighteen months from June 1998 to December 1999, six months longer than the SVP indicates is necessary to learn the job (AR 158). The work was performed within the fifteen years preceding the decision, was substantial gainful activity, and lasted long enough for her to have learned the job (AR 26, 50, 149-50, 158). 20 C.F.R. § 404.1560(b)(1). Therefore, even if the ALJ had erred with respect to the administrative assistant position, any such error would be harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (burden of establishing error is harmful rests on party attacking agency's determination).

Accordingly, the court concludes that the ALJ did not err in finding that plaintiff is capable of performing the past relevant work of administrative assistant.

## D. Determinations Regarding Other Relevant Past Work

Next, plaintiff argues that the ALJ erred by not finding that plaintiff's past relevant work was composite in nature and also erred by finding that plaintiff could return to the least strenuous of her past duties (#10, p. 12-13).

Work involving significant elements of two or more occupations is composite in nature and has no counterpart in the DOT. SSR 82-61. Composite jobs often comprise a variety of duties and strength demands, and "[t]o classify an applicant's 'past relevant work' according to the least demanding function of the claimant's past occupations is contrary to the letter and spirit of the Social Security Act. *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir. 1985). "[Composite] situations will be evaluated according to the particular facts of each individual case." SSR 82-61. A claimant's own description of her past work is "highly probative" of the job's demands. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993); *see also* SSR 82-62 ("the claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands, and nonexertional demands of such work").

In her Work History Report, plaintiff described her past employment as "HR," "administrative assistant," "accountant," and "dealer" (AR 158). The administrative assistant, accountant, and dealer positions that plaintiff described each fall into a particular DOT category: administrative assistant, DOT code 169.167-010 (sedentary, SVP 7); accounting clerk, DOT code 216.482-010 (sedentary, SVP 5); and dealer, DOT code 343.464-010 (light, SVP 5) (AR 26, 49-50). Plaintiff testified in front of the ALJ that with her human resources position, she "didn't have just one job" and she "just did everything" including preparing forms, performing orientation, auditing and accounting, and conducting "outside events," which included lifting five gallon cement buckets

and putting up tents (AR 45). She further described her HR duties in her Work History Report as "[f]iled and completed paperwork, sent out memos, [conducted] employee orientation, administrate[d] policies, monitor[ed] performance, [and] implement[ed] company policies" (AR 159). Based on the Work History Report and plaintiff's testimony, the VE testified that plaintiff's past work "was a combination of things and she was involved in a variety of things" (AR 49). The vocational expert identified seven separate DOT codes comprising the duties performed at plaintiff's four jobs (AR 49)

Plaintiff argues that three of the seven occupations that the VE identified exceed her residual functional capacity as assessed by the ALJ (#10, p. 13). Plaintiff contends that the ALJ erred by classifying plaintiff's past relevant work by the lightest duties performed when the work also included duties that exceed her residual functional capacity (#10, p. 13).

Defendant argues as follows: plaintiff conceded that her "primary job was office manager in human resources" (#14, p. 5; AR 45, 159). While plaintiff testified that her human resources job included some non-sedentary tasks such as lifting five-gallon cement buckets and putting up tents for outdoor events, this does not appear to have made up any significant part of her duties (AR 45). Plaintiff did not mention any lifting or other significant exertional activity when she described her duties in the Work History Report (AR 159). The Work History Report form asked: "[e]xplain what you lifted, how far you carried it, and how often you did this," and plaintiff responded: "none" (AR 159). Plaintiff also indicated on the form that the heaviest weight she was required to lift was "less than 10 lbs" and the amount frequently lifted was "less than 10 lbs" (AR 159). Based on the information plaintiff provided, the VE classified plaintiff's past work in human resources under the following categories: personnel manager, DOT code 166.117-018 (sedentary, SVP 8); personnel

clerk, DOT code 209.362-026 (sedentary, SVP 4); scheduler, DOT code 238.367-022 (sedentary, SVP 4); and convention manager, DOT code 187.167-078 (light, SVP 7) (AR 26, 49-50).

The court concludes that plaintiff's description of her human resources work indicates that the ALJ made a reasonable determination of her past relevant work based on the particular facts of her case (AR 26). Plaintiff indicated in her Work History Response that her human resources position required little to no exertional activities (AR 159). She mentioned in her testimony before the ALJ that she did put up some tents and lift five-gallon cement buckets, but also testified that her "primary job was office manager in human resources" (AR 45). Accordingly, the ALJ did not err in determining what comprised plaintiff's past relevant work.

**E. Hypothetical Posed to the Vocational Expert**

Finally, plaintiff argues that the ALJ posed an improper hypothetical to the VE when the ALJ asked the VE to consider whether allowing an individual to elevate her leg above her heart for fifteen minutes every ninety minutes would eliminate any of the jobs that comprise plaintiff's past work (#10, p. 13). Plaintiff contends that the hypothetical invoked a "reasonable accommodation," as may be required under the Americans with Disabilities Act ("ADA"), but which is not an appropriate consideration in a Social Security case. *Id*. at 13-14.

In making a determination of whether an individual could perform her past relevant work, the ALJ may rely on the DOT or choose to consult a vocational expert. *See* 20 C.F.R. § 404.1560(b)(2) (VE can be used at Step Four to determine whether an individual can perform her past relevant work); *see also Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986) (VE properly testified as to impact of a sit/stand option on available jobs); *see also* SSR 83-12 (recommending that where there is "an unusual limitation of ability to sit and stand," a vocational specialist be consulted "to clarify the implications for the occupational base").

"Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays plaintiff's individual physical and mental impairments." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777 (6th Cir.1987) (internal quotations omitted); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

With respect to Social Security and the ADA, "[w]hen contrasting an SSA ALJ's assessment with an inquiry made under the ADA, the Supreme Court has stated the SSA ALJ does not take the possibility of "reasonable accommodation" into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI." *Cantrell v. Colvin*, 2013 WL 5947808 *7 (D. Nev. 2013) (internal quotations omitted) quoting *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795, 803 (1999). The court then explained that:

> [v]ocational experts may properly rely on accommodations that constitute broad vocational patterns, however. Social Security disability assessments are based on the functional demands and duties of jobs as ordinarily required by employers throughout the national economy, and not on what may be isolated variations in job demands. As such, the vocational inquiry focuses not on whether a specific employer might accommodate an impaired worker, but whether positions with the necessary accommodations are sufficiently available in the national economy such that a claimant may reasonably obtain employment.

*Id.*, (internal quotations omitted) quoting Mem. from Daniel L. Skoler, Assoc. Comm'r, SSA on the Am. With Disabilities Act., at 3 (June 2, 1993); *see also Surratt v. Astrue*, 2012 WL 1203945, *9 (D. Oregon 2012). The court in *Cantrell* held that a sit/stand hypothetical posed to the VE was not an improper consideration of an employer accommodation. *Cantrell*, 2013 WL 5947808 *9.

Here, the ALJ found that plaintiff could stand/walk about two hours in an eight-hour day and should avoid most postural activities and environmental exposures (AR 25). The ALJ stated that these restrictions were generally consistent with plaintiff's treating physician's assessment. *Id*. The

ALJ added a restriction to allow plaintiff to take a break every ninety minutes to elevate her leg above her heart for fifteen minutes. *Id*. The ALJ determined that plaintiff is capable of performing past relevant work as an administrative assistant, accounting clerk, personnel manager, and scheduler. *Id*. In support of this finding, the ALJ relied on the following testimony of VE Mary Ciddio:

> ALJ: Let's assume a person of claimant's age, education, and work experience who is able to lift 20 pounds occasionally and 10 pounds frequently, but stand/walk for only two hours in an eight-hour workday. Never climb ladders, ropes, scaffolds, kneels, crouch, crawl. Occasional climbing ramps and stairs, balancing, stooping. Avoid concentrated exposure to cold and heat and vibrations, and avoid moderate exposure to hazards.
>
> Would a person with those limitations be able to perform any prior work?
>
> VE: The administrative assistant work . . . accounting clerk, personnel manager, and personnel clerk.
>
> ALJ: If the individual would have to take a break every hour and a half to elevate their leg above their heart for 15 minutes. What impact would that have on the prior work?
>
> VE: That would be part of the accommodation by the employer. Usually a person gets a break after two hours and one could for the hour and a half would be part of more break [sic] and could fill that into the schedule with the approval of the employer.
>
> ALJ: Would that eliminate those available jobs?
>
> VE: Actually with higher level jobs that she has performed and given that she has experience, then she probably would be able to make those kinds of accommodations. There may be some positions that would not allow her to do that.
>
> But there certainly wouldn't be any more than a slight reduction in the higher level kinds of positions. It should mean that she would still be able to continue to do some kind of work during that period of time . . . .
>
> ALJ: Let's assume that she can do some work during that period of time initially.
>
> VE: Then those would be fine.
>
> ALJ: What would be the prior work that she would be able to do?

>VE:   . . . personnel manager, the personnel clerk, the date scheduler, the administrative assistant. Not the convention manager, but the accounting clerk.

(AR 50).

Plaintiff argues that the ALJ improperly posed a hypothetical to the VE that was not based on broad vocational patterns, but that required the vocational expert to consider individual employer practices (#10, p. 15). She contends that accommodations to the work requirements are not appropriate considerations when determining if jobs exist in significant numbers in the regional or national economy, and thus, the ALJ improperly relied on the VE's testimony. *Id*.

Defendant responds as follows: the hypothetical question that the ALJ posed to the VE contained all of plaintiff's limitations, and therefore, the ALJ properly relied on the VE's response (#14, p. 9). It was appropriate for the ALJ to seek the expertise of the VE to provide testimony on the impact of the limitation to elevate her leg periodically on the availability of past work (#14, p. 8; *see Martinez*, 807 F.2d at 774). The VE explained that plaintiff's past work included semi-skilled to skilled sedentary level jobs, and reasonably concluded that an individual would still be able to perform at least some work with her leg elevated during fifteen-minute breaks every ninety minutes (#14, p. 8; AR 26, 51). The VE's response to the ALJ's hypothetical merely reflected her professional opinion as to the availability of typical accommodations in the workplace generally as opposed to more formal accommodations that must be requested under the ADA (#14, p. 8; citing *Titus v. Astrue*, 2012 WL 3113160 *10 (N.D. Ohio 2012) (VE properly considered hypothetical individual's requirement to use a cane); *Vansa v. Astrue*, 423 Fed.Appx. 381, 382-83 (5th Cir. 2011) (unpublished) (ALJ properly relied on VE's testimony that took into account need of individual to elevate both legs for one hour over the course of a day); *Jones v. Astrue*, 2011 WL 1100238 **10, 13-14 (S.D. Tex. 2011) (ALJ properly relied on VE's testimony where the hypothetical included a

sit/stand option and a requirement for the individual to elevate her feet up to 12 inches, as needed); *Wilcox v. Apfel*, 1999 WL 773505 *7 (E.D. Pa. 1999) (ALJ properly relied on VE testimony that took into account individual's use of a cane and need to keep leg elevated throughout the day).

The court concludes that the ALJ properly relied on the VE's testimony regarding the hypothetical. The hypothetical included all of plaintiff's limitations. *Bayliss*, 427 F.3d at 1217. While the VE used the term "accommodation," which perhaps arguably raised the specter of the ADA, the ALJ did not conflate the Social Security inquiry with one under the ADA. The VE's testimony as a whole conveys that plaintiff's having to elevate her leg above her heart for fifteen minutes every ninety minutes would perhaps only slightly reduce the number of administrative assistant, personnel manager, personnel clerk (the ALJ later eliminated this position) and date scheduler positions available (AR 50-51). The VE's testimony here is analogous to testimony on which many courts have held that the ALJ properly relied. *See, e.g.*, *Titus*, 2012 WL 3113160 *10; (VE properly considered hypothetical individual's requirement to use a cane); *Vansa*, 423 Fed.Appx. at 382-83 (ALJ properly relied on VE's testimony that took into account need of individual to elevate both legs for one hour over the course of a day); *Jones*, 2011 WL 1100238 *13 (ALJ properly relied on VE's testimony where the hypothetical included a sit/stand option and a requirement for the individual to elevate her feet up to 12 inches, as needed); *Wilcox*, 1999 WL 773505 *7 (ALJ properly relied on VE testimony that took into account individual's use of a cane and need to keep leg elevated throughout the day). Accordingly, the ALJ did not err in relying on the VE's testimony regarding the hypothetical.

## IV. CONCLUSION

Based on the foregoing, the court concludes that substantial evidence in the record supports the ALJ's determinations. Specifically, the ALJ did not err in determining that plaintiff's past

relevant work included the position of administrative assistant, in determining that plaintiff was able to perform her relevant past work, and in relying on the VE's testimony regarding the hypothetical that included the limitation that plaintiff be allowed to elevate her leg periodically.  The court recommends that plaintiff's motion for remand/reversal (#10) be denied and defendant's cross-motion for summary judgment (#14) be granted.  The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2,  the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand/reversal (#10) be **DENIED** and defendant's cross-motion for summary judgment (#14) be **GRANTED**.

**DATED:**  February 28, 2014.

_____
**UNITED STATES MAGISTRATE JUDGE**